NATHAN JOSEPH et al., complainants-appellants,

*v.*

JAY S. SKEHAN and wife, defendants-respondents.

[Argued May 17th, 1928.  Decided October 15th, 1928.]

The consummation of the contract for the sale of land having been delayed through the vendor's inability to convey good title, the vendors in possession are liable for the charges accruing against the property during the delay as well as for interest on payments already received from the vendees. Items of adjustment ordered recast.

---

On complainant's appeal from a decree advised by Vice-Chancellor Ingersoll.

*Mr. Frank Kolok,* for the appellants.

*Mr. Charles K. Landis, Jr.,* for the respondents.

PER CURIAM.

This was a vendee's suit for specific performance of a contract to convey real estate.

The case arises out of some speculative real estate transactions, the details of which are for the most part unimportant to the present controversy, which relates to the debit and credit items on closing of title after considerable delay due to various obstacles which will be mentioned at the proper place. The gravamen of the appeal is that the decree imposes on vendees certain losses of interest, &c., which it is claimed should be borne by vendors.

The appellants purchased from one Finestone a contract to convey a described tract of land, in which defendants Skehan appeared as vendors and Finestone as vendee. The Skehans did not own the land at the time, but subsequently acquired title, and there is no special difficulty on that score. The terms of the contract were: Price $10,000, a down payment of $1,000, which was duly paid; $1,500 more on September 20th, 1925; this was paid on September 21st; of the balance of $7,500, $3,750 to be be paid in cash on April 20th, 1926, at which time deed was to be delivered subject to a purchase-money mortgage of $3,750 to be then in being and to run for three years. In fact, the Skehans took title and gave this purchase-money mortgage on March 21st, 1926. The contract provided for a warranty deed conveying a marketable title, and that "all adjustments shall be made as of April 20th, 1926, and possession shall be given the buyer." This seems to mean that possession should be given at the closing of title set for April 20th, 1926, but however this may be, it was apparently not given, and as the vice-chancellor found, had not been given at the date of filing of an informal memorandum by him on December 5th, 1927. We assume for the purposes of this decision that no change of possession has taken place up to this time. This is of some little importance

in settling the basis of an adjustment on closing title, as the premises in question are vacant land. Title was not closed on the date agreed. The reason was that the title search had developed an outstanding notice of *lis pendens,* which had to be cleared off. Thereupon, adjournment till May 8th was taken by mutual consent in writing, the purchasers paying $1,875 of the $3,750 remaining cash payment, and agreeing to pay interest on the balance of the purchase-money. On May 8th the difficulty had not been removed and defendants asked more time, which was accorded them, and the *lis pendens* having been lifted on June 21st, the parties set July 3d to close; and on that date came the split that led to the filing of the bill in this cause. By that time vendees had discovered a sewer assessment of $20, and unpaid taxes for 1926 of $216.45 had accrued, and complainants demanded that the assessment should be paid and the taxes apportioned. Defendants refused to accede to either proposition and insisted that adjustment should still be made as of April 20th, referring the vendees to one Dare, the previous owner, for payment of the assessment; whereupon this bill was filed. The vice-chancellor decided the case in a short memorandum reading in part as follows:

"I will advise a decree in favor of the complainants. The original date for settlement was to be April 20th, 1926. The defendants were unable to give title at that time, and the day of settlement was continued from time to time until July 3d, 1926, at which time the defendant refused to make conveyance unless adjustments were made as of April 20th, 1926.

"Possession has remained in the defendant and he must pay the charges accruing for the time of the delay for which he is responsible."

The position taken by the vice-chancellor in this memorandum was entirely correct (*King* v. *Ruckman, 24 N. J. Eq. 556*) ; and as the settlement had not taken place on July 3d, 1926, because of the default of the defendants, and complainants had been deprived of both property and the money they had paid, from that date up to the date of the decision, the decree should normally have charged defendants "for the time

of the delay for which they were responsible," which would be until they conveyed or tendered a title in conformity with the contract. But the decree is very far from doing this, for it not only gives complainants no credit for interest on their $4,375 already paid in, of which defendants have had all the benefit and complainants none, but actually charges complainants with interest on the $3,750 mortgage from July 3d, 1926, which defendants have paid and which should be borne by them as vendors in possession. The $20 assessment has been paid and is out of the case.

To carry out the obvious purport of the actual decision, in which we concur, the items of adjustment should be recast as follows:

Complainants' Dr.—

Balance of purchase-money, $1,875 without interest up to delivery or tender of proper title papers and possession, except interest to July 3d, 1926, as agreed April 17th, 1926.

Complainants' Cr.—

1926 taxes apportioned to July 3d, 1926, $109.

Interest thereon and on the $4,375 already advanced from July 3d, 1926, up to delivery or tender of proper title papers and possession.

Title to be delivered free of taxes for 1927 and 1928, the latter subject to apportionment if conveyance is made or tendered as above before the end of the year.

Defendants to pay or account for interest on the $3,750 mortgage up to delivery of proper title papers and possession, or tender thereof.

Defendants to secure extension of time of payment of the $3,750 mortgage for the same period after such delivery or tender as remained for it to run on July 3d, 1926.

The decree under review will be reversed and the cause remanded to the court of chancery with instructions to enter a decree conformable to the views above expressed, the underlying thought of which is that the appellants are to have a clear title subject to principal of the $3,750 mortgage which is to run as long as it would have run if title had passed on July 3d, 1926; are to have credit for interest on the $4,375

Snead & Co. v. Int. Molders', &c., America.   *103 N. J. Eq.*

paid by them, and are to pay the retained balance of $1,875 less credits to which they are entitled as above.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, MINTURN, KALISCH, BLACK, KATZENBACH, CAMPBELL, LLOYD, WHITE, VAN BUSKIRK, MCGLENNON, KAYS, HETFIELD, DEAR, JJ. 15.